UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRADLEY DAVID KNIRNSCHILD,<br><br>Plaintiff,<br><br>v.<br><br>ADA COUNTY JAIL,<br><br>Defendant. | Case No. 1:20-cv-00327-BLW<br>(lead case)<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |
| BRADLEY DAVID KNIRNSCHILD,<br><br>Plaintiff,<br><br>v.<br><br>ADA COUNTY JAIL,<br><br>Defendant. | Case No. 1:20-cv-00341-BLW<br>(consolidated case) |

Plaintiff Bradley David Knirnschild, a pretrial detainee inmate at the Ada County Jail, has filed two original Complaints (which were consolidated into this action, see Dkt. 1, 6), an Amendment to Original Complaint (Dkt. 7), an Amended Complaint (Dkt. 11) and a Second Amended Complaint (Dkt. 13) (which is nothing more than a one-page case caption). He has also filed a Proposed Supplemental Complaint. (Dkt. 15.)

The Court has reviewed the pleadings and has determined that further amendment is required if Plaintiff desires to proceed. To avoid confusion in the record, the Court will

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

strike all of Plaintiff's current pleadings. He will be ordered to bring all of his excessive noise and medical claims against all defendants in this action. Plaintiff's Proposed Supplemental Complaint regarding access to courts issues against a different set of defendants will be severed into its own new action.

1.  **Standard of Law**

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

In addition, the Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal*/*Twombly* standard. To state a claim under 42 U.S.C. § 1983, the civil rights statute, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

2.      **Factual Allegations**

Plaintiff's several pleadings allege the following. Plaintiff was housed in the maximum security unit of the Ada County Jail from about December 2019 to February 2020. During that time, he asserts that the loud slamming of doors and the particular construction of the cells proved to be an abnormally loud environment that caused him to develop tinnitus in his left ear. He asserts that he complained verbally and through the jail's kiosk system that he developed tinnitus from being housed in Cell #1510. Plaintiff asked for earplugs and for a transfer to a different cell, but he alleges that those requests were denied, some by medical personnel and some by prison officials.

Plaintiff sought medical help when he developed tinnitus. Nurse Michael Brewer examined Plaintiff's ears and saw no blockage or buildup of ear wax and determined there was no need to perform an ear flush. Nurse Brewer said the ringing in Plaintiff's left ear was tinnitus and there were no cure for it. (Dkt. 3 in Case No. 20-341.)

Plaintiff alleges that the loud noises brought on or exacerbated symptoms of his pre-existing Addison's disease, including heart flutters, chest pain, dizziness, shortness of

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

breath, fatigue, sleep loss, high blood pressure, and stress on the endocrine system. (Dkt. 11 in Case No. 20-327.) He asserts that Defendants were aware of his Addison's disease when he first came to the jail. Plaintiff says that Defendants denied his requests to move when he told prison officials he had difficulty sleeping and when he reported his medical symptoms to medical personnel.

Plaintiff alleges that, on December 31, 2019, he saw Dr. Stuart Clive for tinnitus and stress-induced symptoms, and Dr. Clive did not refer him to a specialist.

Plaintiff alleges that, on February 19, 2020, Bradley Bigford, a Physician's Assistant, attempted to treat Plaintiff's tinnitus with Zyrtec, without being qualified to diagnose or treat Plaintiff, and that Bigford did not provide earplugs or refer him to a specialist. Bigford told Plaintiff that the ringing in his ears would go away in about a month and a half, but it did not.

Plaintiff alleges that, on February 19, 2020, Dr. Clive "was given the opportunity to review Bradley Bigford's findings" and made an informed decision to not provide Plaintiff with earplugs and not refer him to a specialist.

On July 1, 2020, Plaintiff, then 27 years old, was sent to a hearing specialist at the Idaho Elks Hearing and Balance Center, Samantha Brumbach, who tested his ears and informed him that tinnitus was incurable, but she gave him a list of alternative things to try to help lessen the symptoms and irritation. In the Elks Center report, the audiologist wrote: "Patient reports ... he was given ear plugs but they were uncomfortable." (20-317, Dkt. 11-2, p. 3.)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

In a follow-up letter in response to a letter of inquiry from Plaintiff, Ms. Brumbach clarified:

> The test where you had some reduced responses indicates possible damage in the outer hair cells of the cochlea (the snail like structure). As previously stated, the damage is minimal and there is no way to determine when this damage occurred or what the result of the damage was. It could be a natural consequence of an aging ear or noise exposure throughout your lifetime.

(Dkt. 11-2, p. 7, in Case 20-317.)

Plaintiff alleges that, after he was diagnosed with tinnitus, he was still housed next to a loud slamming door without any hearing protection.

Different from his statement to the audiologist that he was, in fact, given earplugs but found them uncomfortable, Plaintiff states in his pleading that the Ada County Jail has a policy of not issuing ear plugs to indigent inmates free of charge, and that he was indigent at the time he requested earplugs. Plaintiff also asserts that he desires to amend his pleadings to sue the Ada County Board of Commissioners-District I, because Idaho Code § 20-622 requires jail commissioners to inspect the jail living conditions every three months.

3.     Discussion

An essential element of a § 1983 case is that the plaintiff show that the defendants' actions *caused* the deprivation of a constitutional right. 42 U.S.C. § 1983*; Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The causation requirement of § 1983 ... is not satisfied by a showing of mere causation in fact[;] [r]ather, the plaintiff must establish proximate or legal causation." *Id.* The

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

proximate cause analysis focuses on whether it was foreseeable that the state actor's conduct would result in a deprivation of the prisoner's right to access the courts. *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 784-85 (9th Cir. 2000)). Plaintiff has not clearly linked any act of any defendant to his injury. Therefore, he must file a Third Amended Complaint if he desires to proceed.

If Plaintiff chooses to file a Third Amended Complaint, he must allege a sufficient causal connection between each defendant's actions and the claimed deprivation of his constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 (a complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement").

The Third Amended Complaint should address these questions. If he does not have sufficient information to show a causal link between a defendant and his injuries, he should omit that defendant at this time, retaining the potential to amend his pleadings when he has obtained more information.

When did Plaintiff first report that the slamming doors were bothering his ears, how did he report it, what is the title or name of the person he reported it to, and what was their response? When was the next time he reported that the slamming doors were bothering his ears, what is the title or name of the person he reported it to, and what was

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

their response? This question should be answered for each additional time he reported this.

When did Plaintiff first request earplugs, from whom, and what was the response? What is the name of the person who told Plaintiff that the Ada County Jail had a policy of not giving free ear plugs to jail inmates, and what date was this done? When was Plaintiff given earplugs, who gave them to him, and what prompted them to give him the earplugs? Did Plaintiff not wear the earplugs because they were uncomfortable, and, if so, what dates did he have ear plugs but not wear them consistently?

If the audiologist told Plaintiff that tinnitus is incurable, then what facts show that Nurse Brewer, P/A Bigford, and Dr. Clive did anything that caused Plaintiff's injury? Who referred Plaintiff to the audiologist and when? Did the audiologist do anything to help the tinnitus or did she simply test for and confirm its diagnosis? Did the tinnitus get worse over time or stay the same? If it became worse, when did it become worse and how can the worsening be described? Has anything helped the tinnitus during the course of the time Plaintiff has suffered from it?

When did Plaintiff first report that the slamming doors or something else caused his Addison's symptoms to flare up, how did he report it, and who did he report it to? When was the next time he reported that something was bothering his Addison's symptoms, how did he report it, and who did he report it to? This question should be answered for each additional time he reported this. Did Plaintiff suffer from the symptoms of Addison's when he arrived at the jail and the noise made them worse, or did they first begin at the jail? Which medical providers did he report the beginning or

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

worsening of his Addison's symptoms to, what did they do to treat him, and when? Did the treatment help, and, if so, how and when?

Plaintiff asserts that the Ada County commissioners are supposed to inspect the jail every three months. How were the commissioners on notice that the slamming of doors at the jail could cause tinnitus? For example, have staff members who work at the jail developed tinnitus, or have other inmates assigned to that same cell developed tinnitus, such that jail officials or county commissioners would be on notice of the consequences of the excessive noise?

The following standards of law may be helpful to Plaintiff in preparing his Third Amended Complaint.

### A.     *Pretrial Detainee Conditions of Confinement Claims*

The Fourteenth Amendment protects a pretrial detainee from "unconstitutional conditions of confinement," a protection that covers Plaintiff's claims of excessive noise and inadequate medical care. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). All such claims require a showing that the defendants had the requisite state of mind that preceded or accompanied the violation—defined by "an objective deliberate indifference standard." *Id*. at 1124-25. Under this standard, the court analyzes whether there was "a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the [defendant] did not take, thus causing the injury that the plaintiff suffered." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019). Unlike the Eighth Amendment standard for convicted felons, for

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

pretrial detainees' claims, "[t]here is no separate inquiry into [a defendant's] subjective state of mind." *Id*.

However, under either standard, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)); *Gordon*, 888 F.3d at 1125 (same). "[T]he plaintiff must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1070).

### B.     *Standard of Law for Policy Claims*

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), established that municipalities "may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton*, 915 F.3d at 602-03. A municipality may not, however, be sued under a respondeat superior theory. *Id*. A plaintiff must therefore show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id*.

### C.     *Standard of Law for Supervisory Claims*

In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit clarified that a supervisory defendant may be held liable under § 1983 if there is "a sufficient causal connection between the supervisor's wrongful

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

conduct and the constitutional violation." 652 F.3d at 1207. Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1207-08 (internal quotations and punctuation omitted). Supervisors cannot be sued for the actions of others merely because they are supervisors. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### D. *No Cause of Action under International Declarations*

Plaintiff also alleges a cause of action under the "Universal Declaration of Human Rights," which is a published declaration by the United Nations. It does not have treaty status. The Universal Declaration of Human Rights Treaty does not "of its own force impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004). This theory does not support a private cause of action and should not be included in the Third Amended Complaint.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Leave to File Amended Complaint (Dkt. 10) is DENIED.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

2. Plaintiff's Second Motion for Leave to File Amended Complaint (Dkt. 12) is DENIED.

3. To avoid confusion, the following pleadings are stricken: Dkt. 1, Dt. 7, Dkt. 11, Dkt. 13, and Dkt. 15.

4. Plaintiff is authorized to file one complete Third Amended Complaint, containing all of his allegations regarding excessive notice and medical issues against all of defendants for whom he has facts supporting a causal link. If Plaintiff is permitted to proceed on his Third Amended Complaint and later discovers facts sufficient to support claims against defendants he did not include, Plaintiff may move to amend to assert such claims within the permissible time frame.

5. The Third Amended Complaint will be the only pleading upon which Plaintiff will be permitted to proceed in this action, and he will not be proceeding on any of the pleadings which have been stricken.[1] The Third Amended Complaint is due no later than **30 days** after entry of this Order. Plaintiff shall file a "Motion to File Third Amended Complaint" with his pleading.

---

[1] The Third Amended Complaint must contain all of Plaintiff's allegations in a single pleading; the amended complaint will replace the original Complaints and all prior amendments. Therefore, defendants and claims from the original Complaint and prior amendments that are not included in the Third Amended Complaint will no longer be considered part of this case. *See* Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.").

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

6. Docket 15, the "Supplemental Complaint" shall be severed from this case and a copy filed in a new action because Plaintiff's access to courts claims are unrelated to the claims and defendants regarding noise and medical issue allegations.

7. Plaintiff need submit only his original pleadings, motions, or other papers to the Clerk of Court; no copies are necessary, as the Court's docketing system is electronic, and all judges and court staff access the filings electronically. However, Plaintiff should keep his originals evidentiary documents, not submit those to the Court, but submit one copy with any original pleading, motion, or response.

DATED: October 13, 2020

B. Lynn Winmill
U.S. District Court Judge